IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, | |
| Plaintiff, | Case No. 19-cv-001098 |
| v. | |
| ADMIRAL PARKWAY, INC, and FRICK'S QUALITY MEATS, INC. d/b/a FRICK'S MEAT PRODUCTS, INC. | |
| Defendants. | |

**CINCINNATI SPECIALTY UNDERWRITERS INSURANCE
COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES Plaintiff The Cincinnati Specialty Underwriters Insurance Company, by and through its attorneys, Litchfield Cavo LLP, and for its Complaint for Declaratory Judgment against defendants, Admiral Parkway, Inc. and Frick's Quality Meats, Inc. d/b/a Frick's Meat Products, Inc., alleges as follows:

**Nature of the Action**

1.      This is an action for declaratory judgment and other relief brought pursuant to 28 U.S.C. § 2201, which has been brought to determine whether The Cincinnati Specialty Underwriters Insurance Company ("CSU") has any obligation to defend or indemnify defendant Admiral Parkway, Inc. ("Admiral") with respect to a lawsuit filed against it the United States District Court for the Southern District of Illinois. That lawsuit is a suit for breach of contract, negligence and conversion entitled *Frick's Quality Meats, Inc. d/b/a Frick's Meat Products, Inc.*

*v. Admiral Parkway, Inc.*, Case No. 3:19-cv-00864, filed in the United States District Court for the Southern District of Illinois (the "Underlying Lawsuit").

2.     CSU's position is that for the reasons set forth below, there is no coverage for the Underlying Lawsuit for Admiral pursuant to the terms of the policy of insurance that CSU issued to Admiral.

3.     Upon information and belief, this declaratory judgment action will resolve certain issues pertaining to whether CSU has any obligation to provide a defense to Admiral with respect to the Underlying Lawsuit, or to indemnify Admiral in the event it has any liability in connection with the Underlying Lawsuit.

## The Parties

4.     At all times herein mentioned, plaintiff The Cincinnati Specialty Underwriters Insurance Company is citizen of both Delaware and Ohio because it is a Delaware Corporation with its principal place of business at 6200 S. Gilmore Road, Fairfield, Ohio 45014.

5.     At all times herein mentioned, on information and belief, defendant Admiral Parkway, Inc. ("Admiral") is a citizen of the State of Illinois because it is an Illinois corporation with its principal place of business at 1000 Eleven South, Columbia, Illinois 62236 in Monroe County, Illinois.

6.     At all times herein mentioned, defendant Frick's Quality Meats, Inc. d/b/a Frick's Meat Products, Inc. Group, Inc. ("Frick's") is a citizen of the State of Missouri because it is a Missouri corporation with its principal place of business at E360 M.E. Frick Drive, Washington, Missouri 63090, in Franklin County, Missouri. Frick's is joined as a necessary party to CSU's Complaint.  CSU seeks no specific relief from or against Frick's.  CSU has joined Frick's as a party defendant to ensure that Frick's is bound by the judgment rendered in this lawsuit.

## Jurisdiction and Venue

7.      This court has jurisdiction over this matter under 28 U.S.C. §1332(a)(1) because complete diversity of citizenship exists between CSU and each of the defendants, and the amount in controversy, including the combined costs of defense and indemnity in the underlying case at issue, exceeds the sum or value of $75,000.00 exclusive of interest and costs.

8.      This court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, in relation to the dispute and controversy between the parties with respect to insurance obligations and the allegations of the Underlying Lawsuit.

9.      Venue is proper in this District and Court under 28 U.S.C. §1391(a).   A substantial part of the events or omissions giving rise to the claim occurred in this District.

## Facts

### The Underlying Lawsuit

10.      On or about August 7, 2019, Frick's filed its complaint in the Underlying Lawsuit against Admiral for damages allegedly sustained because Admiral breached a contract to store Frick's ham products at a certain temperature. The Complaint in the Underlying Lawsuit contains three counts. A true and correct copy of the Complaint in the Underlying Lawsuit is attached hereto as Exhibit 1 (hereinafter, the "Complaint").

11.      The Complaint in the Underlying Lawsuit alleges that Admiral agreed to store ham products manufactured by Frick's at a storage temperature of 28 degrees Fahrenheit. (Ex. 1 at ¶ 7). The Complaint also alleges that beginning on August 24, 2017 and on numerous dates thereafter through October 24, 2017, Frick's delivered to Admiral over 1 million pounds of ham product for storage at Admiral's storage facility located in Valmeyer, Illinois.  (Ex. 1 at ¶ 8). Frick's paid $19,536 to Admiral for storage fees.  (Ex. 1 at ¶ 9).

12.     The Complaint goes on to allege that on November 13, 2017, Frick's retrieved a load of product from Valmeyer's storage facility and delivered it to the HEB grocery chain, which promptly rejected the load of product because the temperature of the meat was between 42.5 degrees and 43.5 degrees Fahrenheit. After rejection of the load of meat, Frick's sent two employees to Admiral's Valmeyer storage facility to verify the product temperature. Inspection of the meat products revealed that the surface temperature of the ham products and the Admiral facility was approximately 48-49 degrees Fahrenheit and that the core temperature of the ham products was 43.8 degrees Fahrenheit (Ex. 1 at ¶¶ 10 - 13).

13.     The Complaint in the Underlying Lawsuit also alleges that Admiral's temperature records showed that Admiral allowed the cave temperature to rise from 34 degrees to 39 degrees Fahrenheit and to vary thereafter between 37 degrees and 42 degrees. As a result of Admiral's failure to maintain the product temperature below 28 degrees Fahrenheit, Frick's could not safely sell the product to the consuming public and had to destroy approximately 775,867 pounds of ham products. (Ex. 1 at ¶¶ 14, 16).

14.     Count I of the Complaint is styled as a claim for Breach of Contract.  Count I includes the allegations cited above. Count I also alleges that representatives of Admiral and Frick's had discussions regarding the storage of meat products by Admiral and that on August 23 those individuals inspected the property where Admiral would store the ham products. (Ex. 1 at ¶¶ 18, 19).

15.     Count I alleges that Admiral and Frick's entered into a verbal contract in which Admiral agreed to store ham products for Frick's at precise temperature specifications and that Admiral breached the contract by failing to maintain a proper temperature during storage, thereby making more than 775,000 pounds of ham unusable. (Ex. 1 at ¶¶ 22, 23, 26 and 27).  As

a result of the alleged breach of contract, Frick's seeks damages in excess of $775,000, interest, attorneys' fees and costs. (Ex. 1 at Prayer for Relief, Count I).

16.     Count II of the Complaint is styled as a claim for Negligence. Count II includes paragraphs 1 – 23 of Count I. (Ex. 1 at ¶ 29). Count II also alleges that Admiral owed Frick's a duty of care to maintain the products it was storing at the appropriate temperature. (Ex. 1 at ¶ 30).

17.     Count II goes on to allege that Admiral breached its duty by

> a) allowing the temperature to reach a temperature far exceeding that required in order to safely sell the products to the public; and b) through its failure to instruct, train or educate its employees to keep the relevant temperature at 28 degrees Fahrenheit.

As a result of Admiral's negligence, Frick's allegedly suffered damages in excess of $775,000. (Ex. 1 at ¶¶ 31, 32).

18.     Frick's seeks damages in excess of $775,000, interest, attorneys' fees and costs. (Ex. 1 at Prayer for Relief, Count II).

19.     Count III of the Complaint is styled as a claim for Conversion. Count III incorporates paragraphs 1 – 27 of Count II. Count III also alleges that Admiral "wrongfully exercised control over Frick's products, rendering such unusable and depriving Plaintiff of use and control" (Ex. 1 at ¶ 34), and that Admiral "wrongfully exercised control over Frick's products, harming them in such at [sic] manner than [sic] prevented Frick's from fulfilling purchase orders". (Ex. 1 at ¶ 35).

20.     As a result of Admiral's alleged conversion, Frick's seeks damages in the form of physical injury to its tangible property – the meat products – as well as resulting loss of the use of such." (Ex. 1 at ¶ 36). Frick's seeks damages in excess of $775,000, interest, attorneys' fees and costs. (Ex. 1 at Prayer for Relief, Count III).

### The Cincinnati Specialty Underwriters Insurance Policy

21.     CSU issued a policy of insurance bearing policy number CSU 0096703 to Admiral Parkway, Inc. (the "Policy"). The Policy supplies commercial general liability coverage. The Policy was issued with effective dates from March 24, 2017 to March 24, 2018. A true and correct certified copy of the Policy is attached hereto as Exhibit 2.

22.     The Policy includes Form CG 00 01 04 13. Form CG 00 01 04 13 contains, in pertinent part, the following insuring agreement language:

*COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

*1.  Insuring Agreement*

*a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:*

*(1)  The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and*

*(2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.*

*No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under Supplementary Payments – Coverages **A** and **B**.*

*b.  This insurance applies to "bodily injury" and "property damage" only if:*

*(1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*

*(2)  The "bodily injury" or "property damage" occurs during the policy period; and*

*(3)  Prior to the policy period, no insured listed under Paragraph **1**. Of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change, or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period. ...*

23.     Form CG 00 01 04 13 contains the following relevant definitions:

*13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

*17.     "Property damage" means:*

> ***a.***     *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*
>
> ***b.***     *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*
>
> *For the purposes of this insurance, "electronic data" is not tangible property.*

**18.**     *"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit: includes:*

> a.     *An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or*
>
> b.     *Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.*

**21.**     *"Your product":*

> a.     *Means:*
>
> > (1)     *Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:*
> >
> > > (a)     *You;*
> > >
> > > (b)     *Others trading under your name; or*
> > >
> > > (c)     *A person or organization whose business or assets you have acquired; and*
> >
> > (2)     *Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.*
>
> b.     *Includes:*
>
> > (1)     *Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and*
> >
> > (2)     *The providing of or failure to provide warnings or instructions.*
>
> c.     *Does not include vending machines or other property rented to or located for the user of others but not sold.*

**22.**     *"Your work":*

> a.     *Means:*
>
> > (1)     *Work or operations performed by you or on your behalf; and*

> > *(2)     Materials, parts or equipment in connection with such work or operations.*
>
> > *b.     Includes:*
>
> > > *(1)     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and*
>
> > > *(2)     The providing of or failure to provide warnings or instructions.*
>
> > *c.     Does not include vending machines or other property rented to or located for the user of others but not sold.*

24.     Form CG 00 01 04 13 contains the following pertinent exclusions:

***COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY***

*2.     **Exclusions***

 *This insurance does not apply to: ...*

> *a.     **Expected or Intended Injury***
>
> > *"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. ...*
>
> *b.     **Contractual Liability***
>
> > *"Bodily injury or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:*
>
> > > *(1)     That the insured would have in the absence of the contract or agreement; or ...*
>
> *j.     **Damage to Property***
>
> > *"Property damage" to:*
>
> > > *(4)     Personal property in the care, custody or control of the insured; ...*
>
> > > *(6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. ...*
>
> > *Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.*
>
> > *Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".*
>
> *l.     **Damage to Your Work***
>
> > *"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".*
>
> > *This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.*

25.     The Policy contains the following amendatory endorsement Form CSGA 402 03 16, entitled "Contractors – Changes to Commercial General Liability Coverage Part", which provides as follows:

*This endorsement modifies insurance provided under the following:*

`      *COMMERCIAL GENERAL LIABILITY COVERAGE PART*

***EXCLUSION – BREACH OF CONTRACT***

*The following exclusion is added to Paragraph **2**. **Exclusions** of **Section I. – Coverage A – Bodily Injury and Property Damage Liability:***

*This insurance does not apply to any claim for "bodily injury" or "property damage" arising directly or indirectly from breach of express or implied contract, including breach of an implied in law or implied in fact contract. This exclusion does not apply to liability for damages that an insured would have in the absence of the contract.*

## Count I
### (Declaration of No Coverage – Admiral)

26.     CSU repeats and realleges each and every allegation set forth in paragraphs 1- 25 as if fully set forth herein.

27.     There is no coverage under the Policy for Admiral:

a) Exclusion j(4), the "Care, Custody or Control" exclusion, applies to exclude coverage for the Underlying Lawsuit;

b) Exclusion j(6) applies to exclude coverage for the Underlying Lawsuit;

c) The Breach of Contract exclusion within endorsement form CSGA 402 03 16, entitled "Contractors – Changes to Commercial General Liability Coverage Part" applies to exclude coverage for the Underlying Lawsuit;

d) Exclusion a, the "Expected or Intended Injury" exclusion applies to exclude coverage for the Underlying Lawsuit;

e) The Complaint in the Underlying Lawsuit does not allege an "occurrence"; and/or

f) The Complaint in the Underlying Complaint does not seek damages because of "property damage";

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, The Cincinnati Specialty Underwriters Insurance Company requests entry of a declaratory judgment finding and declaring:

A.     That Cincinnati Specialty Underwriters Insurance Company has not duty under the Policy to defend or indemnify Admiral Parkway, Inc.;

B.     That Cincinnati Specialty Underwriters Insurance Company be awarded its costs of suit; and

C.     That this Court grant other and further relief as it deems proper under the evidence and circumstances.

Dated:  October 8, 2019

LITCHFIELD CAVO LLP


By:      /s/ Brian M. Reid
Attorneys for The Cincinnati Specialty Underwriters
Insurance Company


Brian M. Reid (ARDC#6216739)
Kevin A. Titus (ARDC #6217520)(*Pro Hac Vice pending*)
LITCHFIELD CAVO LLP
303 West Madison, Suite 300
Chicago, Illinois 60606
(312) 781-6617 (Reid
(312) 781-6668 (Titus)
Fax: (312) 781-6630
reid@litchfieldcavo.com
titus@litchfieldcavo.com